UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS – FT. WORTH DIVISION

| | | |
|---|---|---|
| POT OF GOLD ENTERTAINMENT, LLC, | § | |
| MEACHEM TOBACCO INC. | § | |
|   d/b/a CLOUD DREAMS, | § | |
| EDEN FOOD MART, INC., | § | CAUSE NO. |
| MRJ FOOD STORE, INC., | § | _____ |
| SAMEERAQ, INC. | § | |
|   d/b/a MILLER GROCERY & GRILL GAME ROOM | § | |
|     *Plaintiffs*, | § | |
| v. | § | |
| | § | JURY TRIAL |
| THE CITY OF FORT WORTH, | § | REQUESTED |
|     *Defendant*. | § | |
| | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION, and PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF THIS COURT:

    Plaintiffs request a preliminary injunction pursuant to Fed. R. Civ. Pro. 65(a), and after final trial, a permanent injunction. Plaintiffs incorporate their Original Complaint ("Complaint") and its exhibits by reference.

    As initially discussed in the Complaint, Plaintiffs are suffering irreparable injury and monetary damages alone are not adequate; an injunction is necessary to prevent future harm. Plaintiffs seeks immediate equitable relief preventing enforcement of the City's Ordinance No. 27381-12-2024 ("Ordinance").

    Plaintiffs believe that a preliminary injunction is appropriate to stop the shutdown of Plaintiffs' businesses during the pendency of the instant case, and ultimately a permanent injunction to stop the City from closing Plaintiffs' businesses using Ordinance No. 27381-12-2024.

    As herein described, Plaintiffs request a preliminary injunction and permanent injunction.

## I.   ARGUMENT AND AUTHORITY

1.      Plaintiffs seek a preliminary injunction and, after final trial, a permanent injunction, enjoining the City of Fort Worth and its agents from interfering with Plaintiffs' operations until their game machine and building leases expire, or if there is a material change in their business operations, or alternatively, when Defendant pays Plaintiffs compensation or when Defendant recovers its costs under Tex. Local Gov't Code § 211.019(d).

2.      To obtain a preliminary injunction, an applicant must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; 3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012) (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)). *Texas v. United States*, 515 F. Supp. 3d 627, 631 (S.D. Tex. 2021)(The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction.)

### A.  Plaintiffs have a high likelihood of success on the merits.

3.      Plaintiffs have a high likelihood of success in showing that the City of Fort Worth's ordinance and actions are a blanket ban on Plaintiffs' previously lawful businesses and a taking without due process under both the United States Constitution and Texas Constitution and violate Tex. Local Gov't Code § 211.019(d).

*i.  Defendant City of Fort Worth is taking Plaintiffs' businesses without compensation using Ordinance No. 27381-12-2024.*

4.      Plaintiffs have a high likelihood of successfully showing that the City of Fort Worth's enactment and enforcement of the Ordinance violates the takings provisions under the United States Constitution and Texas Constitution.

### ii. *Defendant violates the takings clause of the Fifth Amendment of the United States Constitution.*

5. Under the Fifth Amendment, a federal Takings Claim occurs when the government, for example a city, takes private property for public use without just compensation. The Takings Clause applies to the states through the Fourteenth Amendment. *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). There are two main types of takings claims: traditional takings and regulatory takings.

6. A Traditional Takings Claim arises when there is a direct government appropriation or physical invasion of private property. This type of taking is fairly obvious and typically involves *per se* invasions that require compensation. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321–22 (2002). Examples include condemnation proceedings or physical appropriations, such as the government seizing land for a public project. *See*, *e.g.*, *Murr*, 582 U.S. at 393 (flooding a property is a traditional taking).

7. By contrast, a regulatory taking claim arises when government regulations limit the use of private property to such a great degree that it effectively amounts to a taking. Regulatory takings are typically more complex than a traditional taking and involve ad hoc, factual inquiries. *Tahoe-Sierra*, 535 U.S. at 327. There are two categories of regulatory actions that are generally considered *per se* takings: (1) When the government requires an owner to suffer a permanent physical invasion of their property, however minor. *Lingle*, 544 U.S. at 528. (2) When a regulation deprives an owner of all economically beneficial use of their property. *Lingle*, 544 U.S. at 528.

8. Outside these per se categories, regulatory takings are evaluated using the *Penn Central* test, which considers factors such as the economic impact of the regulation, the extent to which the regulation interferes with investment-backed expectations, and the character of the government action. *Penn Cent.*, 438 U.S. at 107. This type of claim often arises when a government denies a landowner approval to develop their property.

9. By enacting and applying the Ordinance, the City of Fort Worth is using its regulations to deprive the Plaintiffs of all economically beneficial uses of Plaintiff's game room operations and machines without compensation. *Lingle*, 544 U.S. at 528; *Penn Cent.*, 438 U.S. at 107.

10. Using Ordinance No. 27381-12-2024, the City's actions are a taking of Plaintiffs' game room operations, including the related property, and the game machines without compensation and violate Plaintiffs' rights under the Fifth Amended of the United States Constitution. *See id.*; Exh. 1-4.

### iii. *Defendant violates the takings provisions of the Texas Constitution.*

11. In Texas, to order a prior existing non-conforming business to move or go out of business is unreasonable and would be taking a person's property without due process of law and without compensation, in violation of the State Constitution, § 17 of Art. 1. *See Allen v. Corpus Christi*, 247 S.W.2d 130, 131 (Tex. Civ. App.—San Antonio 1952), aff'd, 254 S.W.2d 759 (Tex. 1953).

12. The City cannot eradicate Plaintiffs' game room businesses and machines that existed prior to the Ordinance without compensation. *See id.*

### iv. *Defendant City of Fort Worth's Ordinance No. 27381-12-2024 violates Plaintiffs' right to due process.*

13. Plaintiffs have a high likelihood of successfully showing that the City of Fort Worth's enactment and enforcement of the Ordinance violate their rights to due process under the United States Constitution and Texas Constitution.

### v. *Defendant violates the due process clause of the Fourteenth Amendment of the United States Constitution.*

14. "At a minimum, procedural due process or due course of law requires that a party be given reasonable notice and an opportunity to be heard with regard to any proceeding which may directly or adversely affect his legally protected interests." *State Bank of Omaha v. Means*, 746 S.W.2d 269, 272 (Tex. App.—Texarkana 1988, writ denied). Municipalities can be liable for constitutional

deprivations under § 1983 if their agents execute an official policy, such as an ordinance. *See Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *See also Nobby Lobby, Inc. v. Dallas*, 767 F. Supp. 801, 811 (N.D. Tex. 1991).

15. Due process guarantees constitutionally adequate procedures for depriving property rights. *Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th Cir. 1990). The "constitutionally adequate procedures" require notice and an opportunity to be heard. *Id*. Notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id*.

16. Because of the previous regulatory history between the parties and the lack of mitigation or grace period options for current game room operations, and the lack of notice and comment opportunity before being shut down, as applied, the City is depriving Plaintiffs' of their property interests without adequate procedural protections. *See id.* The Ordinance violates Plaintiffs' procedural due process rights under the Fourteenth Amendment.

17. By executing the official policy in Ordinance No. 27381-12-2024, the City of Fort Worth violates Plaintiffs' rights under the Fourteenth Amendment of the United States Constitution. *See Bennett*, 735 F.2d at 862; *Nobby*, 767 F. Supp. At 811. Exh. 1-4.

### vi.   *Defendant violates the due process clause of the Texas Constitution.*

18. "A deprivation of personal property without due process violates the United States and Texas Constitutions." *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.--Hous. [14th Dist.] 2012) (citing *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex.2004)). "The right to procedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner with respect to a decision affecting an individual's property rights. *Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 658." *Id. See also*

*Mosley v. Tex. HHS Comm'n,* 593 S.W.3d 250, 266 (Tex. 2019) ("To say to these appellants, 'The joke is on you. You shouldn't have trusted us," is hardly worthy of our great government.)

19.     In Texas, to order a prior existing non-conforming business to move or go out of business is unreasonable and would be taking a person's property without due process of law and without compensation, in violation of the State Constitution, § 17 of Art. 1. *See Allen,* 247 S.W.2d at 131.

20.     Incorporating the above, in this case, the City of Fort Worth cannot impose unnecessary restrictions not reasonably related to the exercise of police, taxing, or other powers possessed by it to hurt Plaintiffs' previously lawful and proper and normal business activity under the guise of protecting the public interest. *Houston,* 232 F.2d at 430. Nor can they use Ordinance No. 27381-12-2024 to order prior existing non-conforming business to move or go out of business without violating due process of law. *See id.* Ordinance No. 27381-12-2024 is a blanket ban on Plaintiffs' businesses without mitigation options or a grace period, or anywhere in the City for Plaintiffs to move, this Ordinance imposes unnecessary restrictions and orders Plaintiffs' businesses to move or go out of business in violation of due process. Further, there was no prior notice or opportunity for comment.

### vii.    *Defendant violates Tex. Local Gov't Code § 211.019(d).*

21.     Tex. Local Gov't Code § 211.019(d) requires Defendant to pay compensation when ordering a business to close due to a change in zoning through adopting an ordinance that makes that business nonconforming.

22.     In this case, the City of Fort Worth adopted Ordinance No. 27381-12-2024 to "ban eight liners/amusement redemption machines and game rooms" and ordered Plaintiffs to close by March 17, 2025. Exh. 1-2 and 2-2. However, the City of Fort Worth has not compensated Plaintiffs for ceasing their businesses as required under Tex. Local Gov't Code § 211.019(d), nor is the City of

Fort Worth allowing Plaintiffs to continue their nonconforming use until they acquire the cost that the City would have to pay them to close. Exh. 1-4.

23.     As required by Tex. Local Gov't Code § 211.019(d), the City of Fort Worth must either compensate Plaintiffs or allow them to continue their businesses until they have recovered the amount of money that the City of Fort Worth would have to pay for Plaintiffs to close.

   **B.  Plaintiffs will be irreparably harmed without injunctive relief.**

24.     Incorporating the above, Ordinance No. 27381-12-2024 is a blanket ban on operating game rooms in the City of Fort Worth. With the adoption of Ordinance No. 27381-12-2024, Plaintiffs' businesses will become unlawful. Ordinance No. 27381-12-2024 requires Plaintiffs to move or go out of business. Plaintiffs face irreparable harm in the closure of their business operations in the City of Fort Worth. *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989) (Holding that there is irreparable harm when the potential economic loss is so great as to threaten the existence of the movant's business.)

   **C.  The injury to Plaintiffs far outweighs injury to Defendant, if there is any.**

25.     Incorporating the above, without injunctive relief, Plaintiffs will go out of business during the jurisdiction and merits stages of this case due to Ordinance No. 27381-12-2024. On the other hand, with an injunction, Defendant will simply have to refrain from enforcing Ordinance No. 27381-12-2024 and allow Plaintiffs to operate, at least until a final trial on the merits.

   **D.  The injunction will serve the public interest.**

26.     The Fifth Circuit has held that injunctions protecting constitutional freedoms are always in the public interest. *Viet Anh Vo v. Gee*, 301 F. Supp. 3d 661, 667 (E.D. La. 2017).

27.      In the instant matter the application for injunctive relief protects fundamental constitutional rights against government takings without compensation and due process under the United States and Texas Constitutions.

**E. A bond is not necessary.**

28. Where a plaintiff has established probability of success on the merits and it appears unlikely that government would incur any significant cost as a result of injunction, no bond is necessary. *Incubus Invs., L.L.C. v. City of Garland*, No. 3:03-cv-2039-K, 2003 WL 23095680, at *4 (N.D. Tex. Dec. 17, 2003).

29. Because Plaintiffs have established a probability of success on the merits and it appears unlikely that the City of Fort Worth would incur any significant cost as a result of an injunction, no bond is necessary in this case.

**F. This Court should enter a preliminary injunction against Defendant.**

30. Incorporating the above, Plaintiffs seek a preliminary injunction preventing Defendant from enforcing the Ordinance and closing their business during the pendency of the case. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012) (citing *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).

## II.   CONCLUSION AND PRAYER

WHEREFORE Plaintiffs respectfully pray that this Court award a preliminary injunction be entered against the Defendant on behalf of all Plaintiffs during the pendency of the case. Further, after final trial in favor of Plaintiffs, Plaintiffs pray for this Court award a permanent injunction against Defendant.

Respectfully submitted this February 24, 2025,

*/s/Warren V. Norred*
Warren V. Norred, TBN 24045094, warren@norredlaw.com
Solomon G. Norred, TBN 24138007, sgn@norredlaw.com
NORRED LAW, PLLC; 515 E. Border Street; Arlington, Texas 76010
O: (817) 704-3984; F: (817) 524-6686
*Counsel for Plaintiffs*