## DECLARATION OF KAMAL HANTOULI

I declare under penalty of perjury that the proceeding statements are true and correct. My name is Kamal Hantouli. My date of birth is _12/21/1970_____, and my address is ___13 Devon Ct, Mansfield, TX 76063_____-.  I declare under penalty of perjury that the foregoing is true and correct.

1. I own Plaintiff Sameeraq, Inc. d/b/a Miller Grocery & Grill Game Room, which has operated a game room since _01/2018__ under the relevant permits required by the City of Fort Worth and the State of Texas.

2. Plaintiff has Amusement Machine Decal Permit Number___2024-0714 to 2024-0743__ from the City of Fort Worth, expiring on ___03/04/2025_____.

3. Plaintiff has Coin Operated Amusement Machine Permit Number___TGR24-0001___ from the City of Fort Worth, expiring on____03/04/2025_____.

4. I have personal knowledge regarding the collection and maintenance of these records according to regular business practices for my company.

Executed in Tarrant County, State of Texas, on the __19__ day of February 2025.

_____
Kamal Hantouli

# Lease

## Information

**Date:** 04/01/2022
**Landlord:** HQ Food Inc

**Landlord's Address:** 4225 Miller Ave
Fort Worth, TX 76119

**Tenant: Miller Grocery & Grill**

**Tenant's Address: 2200 Miller Ave, Fort Worth, TX 76105**

**Guarantor:** Kamal Hantouli

**Guarantor Address: 13 Devon Ct
Mansfield, TX 76063**

**Premises: Guarantee the Rent in the Amount of $4000 a month**

Approximate square feet:   +/- 3000 square feet

Street address/suite: 2200 Miller Ave,

City, state, zip: Fort Worth, TX 76105

Property description:  CONVENIENT STORE

**Term (months):**   60-MONTHS

**Commencement Date:**   04/01/2022

**Termination Date:**   03/31/2027

**Base Rent (monthly):**   $4000.00

**Tenant's Pro Rata Share:**   Percent (0%)

Tenants: _[signature]_,___   & Landlord or Landlord's _RE,___

**Security Deposit:**      $4000.00

**Permitted Use:**
        CONVENIENT STORE/RESTAURANT

**Tenant's Insurance:**  As required by Insurance Addendum

**Landlord's Insurance:**     As required by Insurance Addendum

**Tenant's Rebuilding Obligations:**  If the Premises are damaged by fire or other elements, Tenant will be responsible for repairing or rebuilding the following leasehold improvements:*[ All partitions, walls, ceiling systems, wiring, light fixtures, floors, finishes, wall coverings, floor coverings, signs, doors, hardware, windows, window coverings, plumbing, heating, ventilating, and air-conditioning equipment, and other improvements in the Premises, whether installed by Landlord or Tenant]**[ All partitions, walls, ceiling systems, wiring, light fixtures, floors, finishes, wall coverings, floor coverings, signs, doors, hardware, windows, window coverings, plumbing, heating, ventilating, and air-conditioning equipment, and other improvements originally installed in the Premises by Tenant]**[ All improvements that are not building standard leasehold improvements.  For purposes of this lease, building standard leasehold improvements are all partitions, walls, ceiling systems, wiring, light fixtures, floors, finishes, wall coverings, floor coverings, signs, doors, hardware, windows, window coverings, plumbing, heating, ventilating, and air-conditioning equipment, and other improvements preselected by Landlord for use throughout the Building*[ and described in Exhibit _____ attached hereto]*]**[ _____ ]*.

**A.**     **Definitions**

    *A.1.*   "Agent" means agents, contractors, employees, licensees, and, to the extent under the control of the principal, invitees.

    *A.2.*   "Essential Services" means utility connections reasonably necessary for occupancy of the Premises for the Permitted Use.

    *A.3.*   "Injury" means (1) harm to or impairment or loss of property or its use, (2) harm to or death of a person, or (3) "personal and advertising injury" as defined in the form of liability insurance Tenant is required to maintain.

    *A.4.*   "Lienholder" means the holder of a deed of trust covering the Premises.

    *A.5.*   "Rent" means Base Rent plus any other amounts of money payable by Tenant to Landlord.

                             **Clauses and Covenants**

**B.**     **Tenant's Obligations**

Tenants: _/s/_ , ___             & Landlord or Landlord's  _RE_

B1.   **Tenant agrees to -**

*B.1.a.*  Lease the Premises for the entire Term beginning on the Commencement Date and ending on the Termination Date.

*B.1.b.*  Accept the Premises in their present condition "AS IS," the Premises being currently suitable for the Permitted Use.

*B.1.c.*  Obey (a) all laws relating to Tenant's use, maintenance of the condition, and occupancy of the Premises and Tenant's use of any common areas and (b) any requirements imposed by utility companies serving or insurance companies covering the Premises.

*B.1.d.*  Pay monthly, in advance, on the first day of the month, the Base Rent to Landlord at Landlord's Address.

*B.1.e.*  Pay a late charge of 5 percent of any Rent not received by Landlord by the tenth day after it is due.

*B.1.f.*  Obtain and pay for all utility services used by Tenant and not provided by Landlord.

*B.1.g.*  Pay Tenant's Pro Rata Share of any utility services provided by Landlord.

*B.1.h.*  Allow Landlord to enter the Premises to perform Landlord's obligations, inspect the Premises, and show the Premises to prospective purchasers or tenants.

*B.1.i.*  Repair, replace, and maintain any part of the Premises that Landlord is not obligated to repair, replace, or maintain, normal wear expected.

*B.1.j.*  Submit in writing to Landlord any request for repairs, replacement, and maintenance that are the obligations of Landlord.

*B.1.k.*  Allow Landlord to file a financing statement perfecting the security interest created by this lease.

*B.1.l.*  Vacate the Premises on the last day of the Term.

*B.1.m.* INDEMNIFY, DEFEND, AND HOLD LANDLORD AND LIENHOLDER, AND THEIR RESPECTIVE AGENTS, HARMLESS FROM ANY INJURY (AND ANY RESULTING OR RELATED CLAIM, ACTION, LOSS, LIABILITY, OR REASONABLE EXPENSE, INCLUDING ATTORNEY'S FEES AND OTHER FEES AND COURT AND OTHER COSTS) OCCURRING IN ANY PORTION OF THE PREMISES. THE INDEMNITY CONTAINED IN THIS PARAGRAPH (i) IS INDEPENDENT OF TENANT'S INSURANCE, (ii) WILL NOT BE LIMITED BY COMPARATIVE NEGLIGENCE STATUTES OR DAMAGES PAID UNDER THE WORKERS'



Tenants: /M,  ___          & Landlord or Landlord's RE, ___

COMPENSATION ACT OR SIMILAR EMPLOYEE BENEFIT ACTS, (iii) WILL SURVIVE THE END OF THE TERM, AND (iv) WILL APPLY EVEN IF AN INJURY IS CAUSED IN WHOLE OR IN PART BY THE ORDINARY NEGLIGENCE OR STRICT LIABILITY OF LANDLORD BUT WILL NOT APPLY TO THE EXTENT AN INJURY IS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LANDLORD AND LIENHOLDER AND THEIR RESPECTIVE AGENTS.

*B2.* **Tenant agrees not to -**

*B.2.a.* Use the Premises for any purpose other than the Permitted Use.

*B.2.b.* Create a nuisance.

*B.2.c.* Permit any waste.

*B.2.d.* Use the Premises in any way that would increase insurance premiums or void insurance on the Premises.

*B.2.e.* Change Landlord's lock system.

*B.2.f.* Alter the Premises.

*B.2.g.* Allow a lien to be placed on the Premises.

*B.2.h.* Assign this lease or sublease any portion of the Premises without Landlord's written consent.

**C.** **Landlord's Obligations**

*C.1.* **Landlord agrees to -**

*C.1.a.* Lease to Tenant the Premises for the entire Term beginning on the Commencement Date and ending on the Termination Date.

*C.1.b.* Obey all laws relating to Landlord's operation of the Premises.

*C.1.c* Return the Security Deposit to Tenant, less itemized deductions, if any, on or before the _____ day after the date Tenant surrenders the Premises.

*C.2.* **Landlord agrees not to -**

*C.2.a.* Interfere with Tenant's possession of the Premises as long as Tenant is not in default.

Tenants:  & Landlord or Landlord's RH

*C.2.b.* Unreasonably withhold consent to a proposed assignment or sublease.

**D.   General Provisions**

**Landlord and Tenant agree to the following:**

*D.1.   Alterations.* Any physical additions or improvements to the Premises made by Tenant will become the property of Landlord. Landlord may require that Tenant, at the end of the Term and at Tenant's expense, remove any physical additions and improvements, repair any alterations, and restore the Premises to the condition existing at the Commencement Date, normal wear expected.

*D.2.   Abatement.* Tenant's covenant to pay Rent and Landlord's covenants are independent. Except as otherwise provided, Tenant will not be entitled to abate Rent for any reason.

*D.3.   Insurance.* Tenant at his own expenses will maintain the respective insurance coverage's described in the attached Insurance Addendum.

*D.4.   Release of Claims/Subrogation.* LANDLORD AND TENANT RELEASE EACH OTHER AND LIENHOLDER, AND THEIR RESPECTIVE AGENTS, FROM ALL CLAIMS OR LIABILITIES FOR DAMAGE TO THE PREMISES, DAMAGE TO OR LOSS OF PERSONAL PROPERTY WITHIN THE PREMISES, AND LOSS OF BUSINESS OR REVENUES THAT ARE COVERED BY THE RELEASING PARTY'S PROPERTY INSURANCE OR THAT WOULD HAVE BEEN COVERED BY THE REQUIRED INSURANCE IF THE PARTY FAILS TO MAINTAIN THE PROPERTY COVERAGES REQUIRED BY THIS LEASE. THE PARTY INCURRING THE DAMAGE OR LOSS WILL BE RESPONSIBLE FOR ANY DEDUCTIBLE OR SELF-INSURED RETENTION UNDER ITS PROPERTY INSURANCE. LANDLORD AND TENANT WILL NOTIFY THE ISSUING PROPERTY INSURANCE COMPANIES OF THE RELEASE SET FORTH IN THIS PARAGRAPH AND WILL HAVE THE PROPERTY INSURANCE POLICIES ENDORSED, IF NECESSARY, TO PREVENT INVALIDATION OF COVERAGE. THIS RELEASE WILL NOT APPLY IF IT INVALIDATES THE PROPERTY INSURANCE COVERAGE OF THE RELEASING PARTY. **THE RELEASE IN THIS PARAGRAPH WILL APPLY EVEN IF THE DAMAGE OR LOSS IS CAUSED IN WHOLE OR IN PART BY THE ORDINARY NEGLIGENCE OR STRICT LIABILITY OF THE RELEASED PARTY OR ITS AGENTS BUT WILL NOT APPLY TO THE EXTENT THE DAMAGE OR LOSS IS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE RELEASED PARTY OR ITS AGENTS.**

*D.5.   Casualty/Total or Partial Destruction*

*D.Number.a.* If the Premises are damaged by casualty and can be restored within ninety days, Landlord will, at its expense, restore the roof, foundation, and structural soundness of the exterior walls of the Premises and any leasehold improvements within the Premises that are not within Tenant's Rebuilding Obligations to substantially the same condition that existed before

Tenants: _MH_, ___          & Landlord or Landlord's _RE_, ___

the casualty and Tenant will, at its expense, be responsible for replacing any of its damaged furniture, fixtures, and personal property and performing Tenant's Rebuilding Obligations. If Landlord fails to complete the portion of the restoration for which Landlord is responsible within ninety days from the date of written notification by Tenant to Landlord of the casualty, Tenant may terminate this lease by written notice to Landlord before Landlord completes Landlord's restoration obligations.

*D.Number.b.* If Landlord cannot complete the portion of the restoration for which Landlord is responsible within ninety days, Landlord has an option to restore the Premises. If Landlord chooses not to restore, this lease will terminate. If Landlord chooses to restore, Landlord will notify Tenant in writing of the estimated time to restore and give Tenant an option to terminate this lease by notifying Landlord in writing within ten days from receipt of Landlord's estimate. If Tenant does not notify Landlord timely of Tenant's election to terminate this lease, the lease will continue and Landlord will restore the Premises as provided in D.Number.a. above.

*D.Number.c.* To the extent the Premises are untenantable after the casualty, the Rent will be adjusted as may be fair and reasonable.

*D.6.*   *Condemnation/Substantial or Partial Taking*

*D.Number.a.* If the Premises cannot be used for the purposes contemplated by this lease because of condemnation or purchase in lieu of condemnation, this lease will terminate.

*D.Number.b.* If there is a condemnation or purchase in lieu of condemnation and this lease is not terminated, Landlord will, at Landlord's expense, restore the Premises, and the Rent payable during the unexpired portion of the Term will be adjusted as may be fair and reasonable.

*D.Number.c.* Tenant will have no claim to the condemnation award or proceeds in lieu of condemnation.

*D.7.*   *Uniform Commercial Code.* Tenant grants Landlord a security interest in Tenant's personal property now or subsequently located on the Premises. This lease is a security agreement under the Uniform Commercial Code. Landlord may file financing statements or continuation statements to perfect or continue the perfection of the security interest.

*D.8.*   *Default by Landlord/Events.* Defaults by Landlord are failing to comply with any provision of this lease within thirty days after written notice and failing to provide Essential Services to Tenant within ten days after written notice.

*D.9.*   *Default by Landlord/Tenant's Remedies.* Tenant's remedies for Landlord's default are to sue for damages and, if Landlord does not provide an Essential Service for thirty days after default, terminate this lease.

*D.10.*   *Default by Tenant/Events.* Defaults by Tenant are (a) failing to pay timely Rent, (b) abandoning or vacating a substantial portion of the Premises, and (c) failing to comply within

Tenants:  & Landlord or Landlord's

ten days after written notice with any provision of this lease other than the defaults set forth in (a) and (b).

*D.11. Default by Tenant/Landlord's Remedies.* Landlord's remedies for Tenant's default are to (a) enter and take possession of the Premises, after which Landlord may relet the Premises on behalf of Tenant and receive the rent directly by reason of the reletting, and Tenant agrees to reimburse Landlord for any expenditures made in order to relet; (b) enter the Premises and perform Tenant's obligations; and (c) terminate this lease by written notice and sue for damages. Landlord may enter and take possession of the Premises by self-help, by picking or changing locks if necessary, and may lock out Tenant or any other person who may be occupying the Premises, until the default is cured, without being liable for damages.

*D.12. Default/Waiver/Mitigation.* It is not a waiver of default if the nondefaulting party fails to declare immediately a default or delays in taking any action. Pursuit of any remedies set forth in this lease does not preclude pursuit of other remedies in this lease or provided by applicable law. Landlord and Tenant have a duty to mitigate damages.

*D.13. Security Deposit.* If Tenant defaults, Landlord may use the Security Deposit to pay arrears of Rent, to repair any damage or injury, or to pay any expense or liability incurred by Landlord as a result of the default.

*D.14. Holdover.* If Tenant does not vacate the Premises following termination of this lease, Tenant will become a tenant at will and must vacate the Premises on receipt of notice from Landlord. No holding over by Tenant, whether with or without the consent of Landlord, will extend the Term.

*D.15. Alternative Dispute Resolution.* Landlord and Tenant agree to mediate in good faith before filing a suit for damages.

*D.16. Attorney's Fees.* If either party retains an attorney to enforce this lease, the party prevailing in litigation is entitled to recover reasonable attorney's fees and other fees and court and other costs.

*D.17. Venue.* Exclusive venue is in the county in which the Premises are located.

*D.18. Entire Agreement.* This lease*[, its exhibits, addenda and riders,]* [is/are] the entire agreement of the parties concerning the lease of the Premises by Landlord to Tenant. There are no representations, warranties, agreements, or promises pertaining to the Premises or the lease of the Premises by Landlord to Tenant, and Tenant is not relying on any statements or representations of any agent of Landlord, that are not in this lease*[ and any exhibits, addenda, and riders]*.

*D.19. Amendment of Lease.* This lease may be amended only by an instrument in writing signed by Landlord and Tenant.

*D.20. Limitation of Warranties.* THERE ARE NO IMPLIED WARRANTIES OF

Tenants: _/d/_, ___        & Landlord or Landlord's _/s/_, ___

MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR OF ANY OTHER KIND ARISING OUT OF THIS LEASE, AND THERE ARE NO WARRANTIES THAT EXTEND BEYOND THOSE EXPRESSLY STATED IN THIS LEASE.

*D.21. Notices.* Any notice required or permitted under this lease must be in writing. Any notice required by this lease will be deemed to be delivered (whether actually received or not) when deposited with the United States Postal Service, postage prepaid, certified mail, return receipt requested, and addressed to the intended recipient at the address shown in this lease. Notice may also be given by regular mail, personal delivery, courier delivery, facsimile transmission, or other commercially reasonable means and will be effective when actually received. Any address for notice may be changed by written notice delivered as provided herein.

*D.22. Abandoned Property.* Landlord may retain, destroy, or dispose of any property left on the Premises at the end of the Term.

*[    *D.23. Subordination.* Landlord subordinates its security interest and liens to purchase-money security interests in Tenant's personal property.

]**[    *D.24. Base Rent Adjustment.* Beginning one year from the Commencement Date, the Base Rent will be adjusted on each anniversary of the Commencement Date (the "Adjustment Date") to reflect increases in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items," issued by the Bureau of Labor Statistics of the United States Department of Labor.

*D.Number.a.* The adjustments in the Base Rent will be determined by multiplying the Base Rent specified in the lease ("Initial Base Rent") by a fraction, the *numerator* of which is the index number for the last month before the adjustment and the denominator of which is the index number for the first month of the first year of the Term. If the product is greater than the Initial Base Rent, Tenant will pay this greater amount as Base Rent until the next rental adjustment. Base Rent will never be less than the Initial Base Rent.

*D.Number.b.* Landlord will notify Tenant of each adjustment to Base Rent no later than sixty days after the Adjustment Date.

]**[    *D.25. Advertisement of Premises.* During the last thirty days of the Term, Landlord may place a sign on the Premises advertising the Premises for rent or sale.

]**[    *D.26. Expansion Option.* Tenant has the option to lease the expansion space identified in the expansion space rider. Tenant may exercise the option by giving Landlord the prior written notice described in the expansion space rider. Tenant will lease the expansion space for the rent stated in the expansion space rider. The expansion space will be accepted in "AS IS" condition with any tenant improvements to be at the expense of Tenant. The expansion space will become part of the Premises and be subject to all the terms of this lease.

]**[    *D.27. Extension Option.* Tenant has the option to extend the Term as provided in the attached extension option rider.


Tenants: /s/, ___                          & Landlord or Landlord's RE

]**[   *D.28.  Waiver of Property Tax Protest Rights.*  Tenant waives all rights to protest the appraised value of the Premises or to appeal the same and all rights to receive notices of reappraisal as set forth in sections 41.413 and 42.015 of the Texas Tax Code.

]**[   *D.29.  Asbestos.*  Buildings or structures located on the Premises may contain asbestos-containing material or presumed asbestos-containing material as defined by OSHA regulations. Tenant has inspected the Premises and conducted such tests and inspections as Tenant deems necessary or desirable.  Tenant will provide Landlord with copies of all such test results and inspections. Tenant will comply with all rules and regulations relating to asbestos in performing any maintenance, housekeeping, construction, renovation, or remodeling of the premises, and Tenant will bear all costs related to removal and disposal of asbestos from the Premises.

| _____ 03/31/2022 | _____ 03/31/2022 |
|---|---|
| **Landlord**                Date | **Tenant**                Date |

_____
**Tenant**                Date

**Tenants:** ___, ___         **& Landlord or Landlord's** ___, ___